## WOOD *v.* JOHNSON ET AL.

[No. 191, September Term, 1965.]

448

*Decided May 4, 1966.*

The cause was argued before Prescott, C. J., and Hammond, Marbury, Barnes and McWilliams, JJ., and Carter, J., Chief Judge of the Second Judicial Circuit, specially assigned.

*Leroy W. Preston* and *David K. Ebersole, Jr.,* for the appellant.

*Kenneth R. Hammer,* with whom was *Sidney Blum* on the brief, for Gilbert Johnson, one of the appellees.

*J. William Schneider, Jr.,* with whom were *Fanseen, Fanseen & Schneider* on the brief, for Norman R. Huffman, the other appellee.

Carter, J., by special assignment, delivered the opinion of the Court.

This is an appeal by William M. Wood, one of the defendants, from the verdict of a jury in favor of the plaintiff, Gilbert Johnson, and exonerating another defendant, Norman R. Huffman. The court directed a verdict in favor of a third defendant, Reaver Huffman, owner of the Huffman car, on the basis of lack of evidence to establish agency, from which there was no appeal. The action grew out of an automobile collision caused by the car operated by the defendant, Wood, running into the rear of a disabled car operated by the defendant, Norman R. Huffman. The plaintiff, who was a passenger in the

front seat of the Wood car, was thrown against the windshield and sustained serious head injuries.

All of the material evidence was produced by the plaintiff and consisted of the testimony of the defendant, Wood, the defendant, Norman Huffman, the investigating officer, the plaintiff himself, and his physician. The officer testified in substance that the accident occurred on December 20, 1959, at about 11:55 p.m. on Washington Boulevard in Baltimore City on a dry, clear night; that the Huffman car was knocked 124 feet into a parking lot and that the Wood car traveled about 45 feet after the impact; that a rub mark started about one foot from the north curb line and continued a distance of 124 feet to the Huffman car; that the boulevard runs east and west and has four lanes of traffic—two for east bound and two for west bound; that there were "no-parking" signs posted on the curb lines; that there were street lights along the boulevard between the curb and sidewalk with globes at the top of the poles 160 feet apart, staggered on the north and south sides so that they appear on one side or the other every 80 feet; that there was such a light about 100 feet west of the place where the Huffman car was stopped on the north side and another on the same side about 60 feet east; that on the south side, across the boulevard, there was also a street light about 20 feet to the west of the stopped car; that the condition of the illumination from the street lights, at the spot where the car was stopped, was "fair"; that Wood did not mention brake failure to him although he discussed the accident at the scene.

The defendant, Wood, was called by the plaintiff and testified that he picked up the plaintiff at a street intersection on the night in question and was proceeding west on the boulevard when the accident occurred; that immediately prior to turning onto the boulevard he stopped at the Monroe Street intersection for a red light and his brakes were working satisfactorily; that he was in the right lane of traffic when he noticed the Huffman car ahead of him as he crossed the railroad tracks about 125 to 130 feet from it, but did not then realize it was stopped; that when about 60 feet from it, traveling 25 to 30 miles an hour, he realized for the first time the car was stopped; that another car was traveling west in the left lane behind him and

about opposite his rear wheels at that time; that he then speeded up to pull into the left lane and around the stopped car but the car beside him also speeded up at the same time and he was unable to get in the left lane; that, when he realized he could not cut around the stopped car when within 25 to 30 feet from it, he applied his brakes, which did not respond, causing him to crash into the back of the stopped car; and that his brakes required repair after the accident. In his answer to interrogatories, he did not mention brake failure as a cause of the collision.

Norman R. Huffman, another defendant, also called by the plaintiff, testified he was operating a car owned by his mother; that he and his wife had attended a drive-in movie and were on their way home when the accident happened; that as he was driving west on the boulevard, his car missed a couple of times and then "conked out" completely; that the battery went dead as he tried to get it started again; that he had just gotten the car that day and had no prior difficulty in operating it; that after the engine stopped, he coasted into the right lane parallel to the north curb about a foot from it and stopped; that he sat in the car for about twenty minutes before the collision, but would get out when cars came along in an effort to stop them and have them push him down the street to a filling station, but none stopped; that between cars he would get back in the car as it was a cold night; that he saw the Wood car at Monroe Street, two blocks away, through his rear view mirror, got out and stood at the rear of his car hoping to get pushed; that Wood just kept on coming at a high rate of speed and crashed into the back of his car; that he had to jump into the left, west bound lane, to avoid being struck; that there was no other car in the left lane immediately prior to, or at the time of, the collision; that he made no attempt to warn approaching traffic except to stand at the rear of the car when other vehicles approached because there was sufficient illumination from the street lights for the operators of approaching cars to see his car in time to avoid a collision; that he knew of no nearby places where his car could have been repaired that night; that Wood did not say anything to him about experiencing a brake failure and made no attempt to pull in the left lane prior to the collision.

The plaintiff testified that when Wood was about a car length from the parked car, he "gave his car the gas" to get into the left lane and crashed; that he saw no other car in the left lane alongside or to the rear of the Wood car before the crash; that he does not recall Wood applying his brakes; and that he was thrown into the windshield and injured.

Dr. Phillip F. Lerner testified he examined Johnson in October of 1960 and found scars in his forehead, drooping of the right eye-lid and damage to the third cranial nerve which were caused by the accident and were in his opinion permanent.

The defendant, Wood, contends that the court, besides erring in failing to direct a verdict in his favor at the conclusion of the whole case, also erred in instructing the jury: (a) that he must establish adequate brake inspection and unexpected brake failure by a preponderance of the evidence to escape negligence on that basis; (b) that if Wood failed to comply with the provisions of Article 66½, § 271, relating to when lights are required, he would be guilty of primary negligence; and (c) in a manner that was tantamount to a directed verdict in favor of the defendant, Huffman.

In determining the correctness of denying the motion for a directed verdict, we must, of course, consider the evidence most favorable to the plaintiff, together with all reasonable and legitimate inferences which may be deduced therefrom. See *Simco Sales Service of Md., Inc. v. Schweigman,* 237 Md. 180, 187, 205 A. 2d 245 (1964) ; *Critzer v. Shegogue,* 236 Md. 411, 415, 204 A. 2d 180 (1964) ; *Richardson v. Scott,* 232 Md. 490, 494, 194 A. 2d 288 (1963). Wood contends that, by calling him as a witness, the plaintiff has established, through his testimony, that the collision was proximately caused by a brake failure; that it occurred suddenly, without warning, and after adequate inspection by him and, therefore, that the plaintiff has, by his own evidence, established the collision occurred without any negligence on Wood's part and consequently his motion for a directed verdict should have been granted.

We fail, however, to find that the evidence most favorable to the plaintiff requires a determination by the jury that the collision was proximately caused by a brake failure. Even though Article 35, § 9 of the Code of 1957, permits the plaintiff to call

the defendant, Wood, as his witness and contradict and impeach him to the same extent as though he had been called by the defendants, he is nevertheless bound by Wood's testimony unless it is contradicted or discredited. See *Maszczenski v. Myers,* 212 Md. 346, 353, 129 A. 2d 109 (1957) ; *Murphy v. Stubblefield,* 133 Md. 23, 30, 104 Atl. 259 (1918). In speaking of when an adverse party's testimony will be considered contradicted or discredited under the statute, the Court in *Proctor Electric Co. v. Zink,* 217 Md. 22, 141 A. 2d 721 (1958), said at p. 33 :

> "The testimony of a witness may be contradicted or discredited by circumstances as well as by statements of other witnesses, and a jury is not bound to accept a witness' testimony as true if it contains improbabilities, or if there are responsible grounds for concluding that it is erroneous."

Considering the plaintiff's evidence relevant to the issue of brake failure, we find that Wood's testimony was contradicted by both the testimony of other witnesses and inconsistent circumstances. Huffman testified he saw the Wood car about two blocks away and that Wood kept coming at a high rate of speed ; made no attempt to cut around the stopped car and crashed into the rear of his car ; that there was no other car at Wood's left at the time of the crash to prevent him from cutting around the stopped car ; and that Wood did not mention brake failure to him as a cause of the accident. The plaintiff himself contradicted Wood's explanation by testifying that Wood did not attempt to cut around the stopped car until he was within about a car length from it and that he saw no evidence of Wood attempting to apply his brakes. The investigating officer testified Wood explained to him how the accident happened, but did not mention a brake failure. This evidence, together with the reasonable inferences deducible therefrom, is sufficient to entitle the jury to find that the plaintiff did successfully contradict and discredit Wood's explanation as to how the accident occurred to the extent that the jury could properly find either that he did not experience a brake failure or if he did that it was not the proximate cause of the collision.

If either of these conclusions were reached the question then, in respect to a directed verdict, is whether there was legally sufficient evidence to establish that the collision was proximately caused by the negligence of Wood, independent of any brake failure. We believe if the jury accepted the contradictory and inconsistent evidence above related, together with the reasonable deductions properly deducible therefrom, there would be an abundance of evidence upon which to predicate a finding that the collision was proximately caused by the failure of Wood to exercise that degree of care and caution in the operation of his vehicle which an ordinary, prudent person would have exercised under similar circumstances and therefore that he was guilty of primary negligence, independent of any brake failure. For these reasons, we find that the trial court correctly denied the defendant Wood's motion for a directed verdict.

Wood further contends that the court erred in instructing the jury that, if they did find that a brake failure proximately caused the collision, then he had the burden of proving adequate brake inspection, prior to the failure, by a preponderance of the evidence in order to avoid a verdict against him on the basis of presumed negligence. This Court has held that the showing of a brake failure makes a prima facie case of a violation of § 291 of Article 66½ and, if such violation is further shown to be the proximate cause of the accident, the then permissible inference of negligence must be controverted by a showing of adequate inspection and a sudden unexpected failure. See *Sothoron v. West,* 180 Md. 539, 543, 26 A. 2d 16 (1942) ; *Kaplan v. Stein,* 198 Md. 414, 84 A. 2d 81 (1951).

Wood concedes that although the burden of proving all facts necessary to his recovery by a preponderance of the evidence always remains with the plaintiff, "normally in order to establish the defense of brake failure there must be a showing [by the defendant] by preponderance of the evidence that there was an inspection and a sudden failure without warning." This concession would seem to have been necessary under Maryland law. *Garfinkle v. Birnios,* 232 Md. 402, 405, approved instructions below which told the jury that the defendant owner of a car (whose responsibility to inspect and test is greater under *Kaplan, supra,* than that of one merely an operator who, under

*Sothoron, supra,* may test "by the simple pressure of a foot") has the burden "as an affirmative defense" of showing proper inspection in a case of claimed sudden brake failure, and *Currie v. United States,* 312 F. 2d 1, affirmed Judge Winter sitting in the District Court, 201 F. Supp. 414, who found, in a rear end collision case, where the defense of the United States was that its vehicle had suffered sudden brake failure, that "in accordance with the Maryland rules, it thus appears that, *prima facie* but not *per se,* plaintiffs have shown negligence and the burden of showing proper inspection and a sudden failure without warning rests upon the Government." Wood claims, however, that because he was called by the plaintiff as an adverse witness the normal rule is changed. We do not agree. We have held that the plaintiff offered testimony of other witnesses and of inconsistent circumstances, which, if believed, rebutted Wood's claim, as an adverse witness, of sudden brake failure. This being so, we think the burden of showing proper prior inspection remained with Wood and the court's charge to this effect was proper.

In respect to the instructions concerned with Article 66½, § 271, the court read to the jury sub-sections (a) and (b) of this section and at the conclusion of the recital said if they found that Wood was operating his vehicle in violation of this section and such violation was the proximate cause of the collision then their verdict should be against the defendant Wood. Section 271, entitled "When Lighted Lamps are Required," provides:

> "(a) *When objects not discernible.* Every vehicle upon a highway within this State at any time when there is not sufficient daylight to render persons, vehicles, animals and substantial objects on the highway clearly discernible at a distance of 300 feet ahead, shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles as hereinafter stated.

> "(b) *Determination of visibility.* Whenever requirement is hereinafter declared as to the distance from which certain lamps and devices shall render ob-

jects visible or within which such lamps or devices shall be visible, said provisions shall apply during the times stated in subdivision (a) of this section upon a straight level unlighted highway under normal atmospheric conditions unless a different time or condition is expressly stated."

No reference was made in the remainder of the instruction as to the type of light thereinafter required, referred to in (a), such as the provisions of § 281 dealing with multiple beam lights and requiring a low beam light sufficient to discern substantial objects 125 feet ahead and high beam lights sufficient to discern such objects 350 feet ahead. Inasmuch as no distance was mentioned as thereinafter required, the 300 feet, referred to in sub-section (a), could well have been interpreted to require lights on the Wood car that would enable the operator to discern objects 300 feet ahead, which is contrary to the requirements of § 281. We have held that instructions which are calculated to confuse or mislead the jury are injurious and should not be given. See *Wintrobe v. Hart,* 178 Md. 289, 13 A. 2d 365 (1940); *Rosman v. Travelers' Ins. Co.,* 127 Md. 689, 96 Atl. 875 (1916); *Levine v. Chambers,* 141 Md. 336, 118 Atl. 798 (1922). In addition, the instruction with respect to sub-section (b) referring to unlighted highways was not based on the evidence in this case and is likewise misleading. See *Homeseekers' Realty Co. v. Silent Automatic Sales Corp.,* 163 Md. 541, 163 Atl. 841 (1933); *Doyle v. Gibson,* 119 Md. 36, 85 Atl. 961 (1912); *Jones v. Collins,* 94 Md. 403, 51 Atl. 398 (1902). We find, therefore, that the portion of the instruction which recites sub-sections (a) and (b) of § 271 and relates them to the liability of the defendant, Wood, was erroneous and injurious. Furthermore, the instruction quoted a part of §§ 291 and 292 of Article 66½ to the effect that every motor vehicle shall be equipped with brakes adequate to stop when traveling 20 miles an hour, within a distance of 30 feet upon a dry surface, free from loose material where the grade does not exceed one percent. There is no evidence that these conditions existed in this case which makes this part of the instruction likewise misleading and injurious.

In respect to that portion of the instruction which deals with

the liability of the defendant, Huffman, this Court finds no prejudicial error. The instruction told the jury the uncontroverted evidence showed that an unforeseeable electrical failure caused the Huffman vehicle to stop at the right curb and, if the jury so found, then the failure of Huffman to have lights on the car would not be a basis for finding him negligent. He testified that he experienced no difficulty in the operation of the vehicle the preceding day or that evening and that the engine stopped for no explainable reason and without warning. There was no contradiction of this testimony which appears to establish an adequate prior inspection by an operator. In *Ford v. Bradford,* 213 Md. 534, 132 A. 2d 488 (1957), where the evidence showed a tractor-trailer was being driven with the lights on, went over a bump and immediately commenced to "spit and pop" and ultimately stopped, and the lights went off, which a later check showed was caused by a battery cable "jumping off," this Court held that the failure to have the rear light on under these circumstances did not constitute negligence.

We held in the *Sothoron* case that the duty of an operator to adequately inspect the vehicle for defective brakes is accomplished by a mere testing of the foot brake prior to the failure. By applying this same rule to an engine, an adequate inspection would appear to be accomplished by operating the engine and finding it in working condition, prior to the failure. Huffman so testified and under the reasoning in the *Sothoron* case, we find that, as a mere operator, he has established an adequate inspection of the general running condition of the vehicle prior to development of the defect. We, therefore, find no error in that part of the instruction which pointed out that the uncontroverted evidence showed that Huffman's failure to have lights on his car would not constitute negligence on his part. *Ford v. Bradford, supra.*

The instructions further told the jury that even if they should find negligence on the part of Huffman but should find that such negligence was passive and should also find negligence on the part of Wood and that such negligence was the moving and effective cause of the injury then the verdict should be in favor of the defendant, Huffman, and against the defendant, Wood, only. This amounts to no more than instructing the

458

jury that, even if Huffman was negligent, he should not be held liable unless his negligence was a proximate cause of the collision. See *Ford v. Bradford, supra; Robert v. Wells,* 170 Md. 367, 184 Atl. 923 (1936). The instruction further sets forth that, if the jury should find the Huffman vehicle was in a position at the right curb with sufficient room for vehicles to pass to its left and that Huffman had no reason to anticipate that Wood would fail to see it and have his car under such control that it could be stopped or turned to the left to avoid striking the Huffman car, then the mere fact of parking the Huffman car should not be considered the proximate cause of the accident and, in that event, the verdict should be for the defendant, Huffman. We believe what was probably intended to be said here was that under the recited circumstances the defendant, Huffman, would not be guilty of negligence. In any event, the recited circumstances, if found by the jury, would be sufficient, we believe, to relieve Huffman of liability under the rule that in the exercise of due care no one is required to anticipate negligent conduct on the part of others. See *Nardone v. Underwood,* 219 Md. 326, 149 A. 2d 13 (1959) ; *Fotterall v. Hilleary,* 178 Md. 335, 13 A. 2d 358 (1940) ; *Edwards v. State,* 166 Md. 217, 170 Atl. 761 (1934). We find, therefore, that the question of the defendant Huffman's liability was fairly submitted to the jury under the evidence of the case and the applicable law.

> *Judgment in favor of the appellee Huffman affirmed, judgment in favor of the appellee Johnson against the appellant Wood reversed and remanded for a new trial; costs to be paid equally by the appellee Johnson and the appellant Wood.*