### State of Vermont v. Levi Vance

(125 A2d 800)

May Term, 1956.

Present: **Jeffords, C. J., Cleary, Adams and Hulburd, JJ., and Sylvester, Supr. J.**

Opinion Filed October 2, 1956.

*C. O. Granai* for the respondent.

*Charles E. Gibson, Jr.,* State's Attorney, for the State.

**Jeffords, C. J.** This is a criminal prosecution under an information containing three counts charging that the respondent on May 4, 1955, and for several weeks prior thereto did deprive certain cows located on his premises of necessary sustenance and did unnecessarily fail to provide them with

proper food in violation of V. S. 47, §8360. There was a verdict of not guilty on one count and of guilty on the other two counts with judgment on the verdicts. The case is here on the exceptions of the respondent.

The respondent moved for a directed verdict of not guilty. This motion was denied with exceptions to the respondent. The first ground of the motion was, in substance, that the information did not adequately and sufficiently identify the cows in question.

■ The sufficiency of an information cannot be tested by a motion for a verdict. *State* v. *Colby*, 98 Vt 96, 97, 126 A 510. The shortage in an information can only be reached, under our practice, by motion to quash, demurrer or motion in arrest of judgment. *State* v. *Cocklin*, 109 Vt 207, 215, 194 A 378.

The case of *State* v. *Baker*, 100 Vt 380, 138 A 736, relied upon by the respondent, had to do with a motion in arrest.

There was no error in denying the motion for a directed verdict based on this ground.

The second ground of the motion was, in substance, that there was no evidence in the case from which the jury could find the respondent guilty.

■ In considering this ground we must view the evidence in the light most favorable to the State. *State* v. *Persons*, 114 Vt 435, 439, 46 A2d 854. So viewed, the jury reasonably could find the following facts: that on May 4th and 6th, 1955, many of the cattle of the respondent, including those set forth in the counts on which verdicts of guilty were rendered, were in very poor condition; were very thin and weak, some had bed sores and some were so weak that they were unable to stand on their feet. Dr. Grass, a veterinarian, who went to the farm of the respondent and inspected the cattle, with other witnesses on the dates above mentioned, testified that the animals were in this condition because they had not been fed enough food and not because of any disease. Witness Stone, an officer of the Vermont Humane Society, who also inspected the cattle, testified, in substance, that since one cow was very thin and weak and apparently dying he ordered it shot.

There was evidence from which the jury reasonably could find that on these dates there was only about one half a ton of hay in the barn of the respondent and very little elsewhere and none suitable to eat and no grain.

In *State* v. *Persons, supra,* at page 437 we construed the word "proper" appearing in the statute "to be such food and drink as are required to preserve the health of the animals." We also said "It is common knowledge that lack of proper food will cause the animals to lose flesh and strength."

There was sufficient evidence, circumstantial and otherwise, to warrant the jury in finding that the condition of the cattle in question on May 4th, and for several weeks prior thereto, was caused by the fact that they were not receiving proper food.

We now turn to the question of whether there was sufficient evidence that the respondent unnecessarily failed to provide them with such food.

The respondent testified that during the winter of 1954 and 1955 he had about 211 head of cattle. A witness for the respondent testified that on the first of May there was about the same number on the farm.

From this evidence the jury reasonably could find that the respondent could and should have sold a sufficient number of his cattle, if necessary, to procure funds with which to buy and provide food for those not sold. There was undisputed evidence that after Mr. Stone had told the respondent to buy some hay suitable for the cattle to eat the respondent said "he had already planned to buy some" and did procure some good hay the next day. This evidence was for consideration of the jury in deciding the question now under consideration.

There was no error in denying the motion for a directed verdict.

Harold Dresser, a witness called by the State, was asked "Have you seen cows on other farms in a thin condition like these?" The respondent objected "to what he has seen elsewhere. We are not charged with what he has seen elsewhere."

■ The claim of error here made is different than that given as a ground of the respondent's objection to the question. When a reason is given below for taking an exception no other reason

will be considered on review. *Parker* v. *Hoeffer*, 118 Vt 1, 14, 100 A2d 434, 38 ALR2d 1216.

Two other exceptions to questions and answers thereto by this witness are briefed. The first question was, in substance, whether he would say that the cows which he had seen were the type that have acetonemia. The ground of the exception was "That is medical testimony that has been testified to in this court." The witness was permitted to answer the question and his answer was "no, I wouldn't say they were the type." The other exception was to the trial court's allowing the witness to give his opinion as to the cause of the condition of the animals which he saw on the respondent's farm. His answer was "I figured they were hungry." The ground of this exception was that this is a matter for medical testimony.

The respondent asserts that expert medical testimony was necessary in respect to these questions and answers. He cites *Ryder* v. *Vermont Last Block Co.*, 91 Vt 158, 167, 99 A 733, as authority for this claim. That case had to do with the condition of a person and it was held that such testimony was necessary as a foundation for the claim of the plaintiff's counsel and submitted to the jury in respect to such conditions.

■ "The fact that the care of animals is generally in the hands of practical men rather than professional men renders it necessary, when considering the admissibility of opinion testimony regarding diseases and the physical conditions or care of animals to apply a much lower standard of qualification to witnesses giving opinion testimony on such matters than is applied to expert witnesses offering testimony as to the diseases or physical conditions of human beings. Persons who have habitually had the care of horses, cattle, dogs, and other domestic animals may testify as to their soundness or the disease which they have***. A person need not be a veterinary to testify to such matters." 20 Am Jur, Evidence, §815 at page 685.

There was undisputed evidence that this witness was a dairy farmer and has spent 20 years on his 750 acre farm; that he is keeping about 100 head of cattle; that he has seen sick cows and those with acetonemia and pneumonia; that he has seen the type of cows that had acetonemia.

█ The competency of a witness when offered as an expert is a preliminary question for the court to decide before receiving his testimony. The trial court permitted this witness to testify. This was an implied finding of his competency. This ruling and finding is not revisable here unless it appears from the evidence to be erroneous or founded upon error of law. *Smith* v. *DeMetre*, 119 Vt 73, 81, 118 A2d 346. The evidence above set forth supports the finding of competency.

The respondent excepted to the allowance of witness Breevort to testify that in October, 1954, there was, in his opinion, about thirty tons of hay in the barn of the respondent. The ground of the objection and exception was that the witness was not qualified.

█ There is no need to spend any time in considering whether the witness was qualified to give this opinion. It is clear that his testimony that the respondent had a substantial amount of hay in his barn about six months prior to the alleged times of the violation of the statute could not have prejudiced the respondent. Consequently if there was error in admitting this testimony, which we need not decide, this error does not constitute reversible error. *Parker* v. *Hoeffer*, 118 Vt 1, 10, 11, 100 A2d 434, 38 ALR2d 1216.

The respondent excepted to that part of the charge in respect to circumstantial evidence. The ground briefed for the claimed error is not the same as that given for the exception. Consequently the reason here given for the claimed error will not be considered. *Parker* v. *Hoeffer, supra*, at page 14.

An exception was taken to the failure of the court to charge that to unnecessarily fail to provide food there must have been an intent to so fail. It was also stated, in substance, as a ground of this exception that it was the intent of the statute that the doing of the act must be with some malice, wantonness, maliciousness or intent to deprive the cattle of the proper food.

█ In *State* v. *Persons, supra*, at page 437 this Court said: "The words 'unnecessarily' and 'proper' are to be understood in their ordinary sense, and as here used can only mean that while the respondent could have provided such food and drink

he failed to do so." This construction of the statute shows that neither intent nor malice is an essential element to be proven to obtain a conviction for a violation of the statute. If the Legislature had intended that intent or malice must be proven it is resaonable to believe, and is clear to us, that it would have used either or both of these words in the statute. In support of this conclusion it should be noted that in V. S. 47, §8366, a statute somewhat similar in its purpose to the one here in question, the words "wilfully," "maliciously" and "intent" are used. The language of the statute does not in terms or by implication make intent or maliciousness an element of the offense created, and therefore such need not be shown in order to justify a conviction. *State* v. *Field*, 95 Vt 375, 381, 115 A 296. There was no error in the failure of the court to charge in the respects claimed.

The respondent excepted to the failure of the court to charge that the respondent is presumed to be innocent until such time as evidence is introduced by the State to take away that presumption.

The law is now well settled in this state that a trial court is not required to so charge. *State* v. *Demag*, 118 Vt 273, 276, 108 A2d 390, and cases cited.

*Exceptions overruled and judgment affirmed. Let execution be done.*